UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PANLIANT FINANCIAL CORPORATION, *et al,* <br><br> Plaintiffs, <br><br> v. <br><br> ISEE3D, Inc. *et al,* <br><br> Defendants. | Case No. 2:12-cv-01376-RFB-CWH <br><br> ORDER |

## I. INTRODUCTION

Plaintiffs bring this action alleging violations of the state and federal RICO statutes and various state law violations. This case arises from facts surrounding: the allegedly fraudulent activities of the Defendants to avoid debts owed to Plaintiffs A.G. Solutions, Ltd. and Panliant; the improper termination of Plaintiff Smith from his position with Defendant ISEE3D; and improper disgorgement of Smith's ISEE3D shares. Before the Court is Defendant Geoghegan's Motion for Summary Judgment. ECF No. 111. For the reasons stated below, Defendant Geoghegan's motion is GRANTED.

## II. PROCEDURAL HISTORY

Plaintiffs filed their Complaint on August 3, 2012. ECF No. 1. Plaintiffs filed an Amended Complaint on December 3, 2012. ECF No. 4.

Defendant filed a Motion to Dismiss on August 8, 2013. ECF No. 28. On December 9, 2013, the Court granted Defendant's Motion as to Plaintiffs' Causes of action numbers 8, 11, and 12. ECF No. 36.

On March 25, 2014, Defendant Bay Management filed a Motion to Dismiss. ECF No. 41. The Court granted this motion on July 21, 2014. ECF No. 70.

On March 23, 2015 Defendant Geoghegan filed a Motion for Summary Judgment. ECF No. 111.

On September 4, 2015, this Court adopted a report and recommendation granting default against Defendant Romanica. On September 30, 2015, Plaintiffs filed for a Motion for Default Judgment against Romanica. ECF No. 131. This motion is unopposed. The Court granted Plaintiff's motion on February 17, 2016. ECF No. 141.

Therefore, the sole remaining defendant is Defendant Geoghegan.

### III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).

Where the party seeking summary judgment does not have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its [initial] burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. If the movant has carried its initial burden, "the nonmoving party must produce evidence to support its claim or defense." Id. at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a

whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). However, the ultimate burden of persuasion on a motion for summary judgment rests with the moving party, who must convince the court that no genuine issue of material fact exists. Nissan Fire, 210 F.3d at 1102.

### IV.     UNDISPUTED FACTS

Defendant Dwight Romanica and Plaintiff Alan Smith were each equal owners and shareholders in Plaintiff Panliant Financial Corporation. Panliant contracted with Defendant ISEE3D, Inc. ("ISEE3D") in August 2007, for certain consulting services to restructure the corporate structure of ISEE3D. Plaintiff Smith was the CEO and later CFO of ISEE3D.

ISEE3D retained Bay Management, Ltd., a company owned by Defendant Geoghagan, to perform consulting services. Pursuant to the Agreement that Bay Management had with ISEE3D, dated August 11, 2008, Bay Management would be responsible for: (1) the company's financial reporting and budgeting; (2) the drafting and maintenance of the company's business plans; (3) development of presentation materials and attendance as required at financial presentations for and on behalf of the company; and (4) attending investor relations activities as determined from time to time by the company. Defendant Geoghegan's involvement with ISEE3D ended in 2009.

While consulting for ISEE3D, Defendant Geoghegan discovered what he believed to be unethical activities performed by Plaintiff Alan Smith, including writing himself checks drawn from the company's bank accounts and filing inflated expense reports. Defendant Geoghegan emailed Defendant Romanica reporting his suspicions on April 23, 2009. Defendant Romanica in turn altered and forwarded Defendant Geoghegan's email to various individuals in the company, some of whom believed the accusations to be false. Defendant Romanica engaged in conversations with these individuals regarding Plaintiff Smith's termination. Defendant Geoghegan was not included in any of these communications after his initial email to Defendant Romanica.

/ / /

/ / /

A board meeting was held on March 25, 2009. Subsequent to this board meeting, Defendant Geoghegan and Bay Management entered a release agreement with Plaintiff Smith and AG Solutions on April 30, 2009.

## V.    ANALYSIS

As an initial matter, the Court dismisses "punitive damages" and "respondeat superior" as separate causes of action, finding that punitive damages are a type of relief, and respondeat superior a theory of liability.

### 1.    Piercing the Corporate Veil

Defendant Geoghegan first argues that Plaintiffs' claims against him fail, as Plaintiffs have not pierced the corporate veil and therefore he cannot be sued individually. The Court agrees.

"Nevada has long recognized that although corporations are generally to be treated as separate legal entities, the equitable remedy of 'piercing the corporate veil' may be available to a plaintiff in circumstances where it appears the corporation is acting as the alter ego of a controlling individual." LFC Marketing Group, Inc., v Loomis, 8 P.3d 841, 846 (Nev. 2000). "The requirements for finding alter ego and piercing the corporate veil are: (1) The corporation must be influenced and governed by the person asserted to be its alter ego; (2) There must be such unity of interest and ownership that one is inseparable from the other; and (3) The facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice." Lorenz v. Beltio, Ltd., 963 P.2d 488, 496 (Nev. 1998). "Some factors to be considered when determining if a unity exists in an alter ego analysis include, but are not limited to, commingling of funds, undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the individual's own, and failure to observe corporate formalities. No one of these factors alone is determinative to apply the alter ego doctrine." Id. at 497.

The burden of proof in this case falls on the Plaintiffs: "[i]n order to demonstrate a unity of interest, it is incumbent upon the one seeking to pierce the corporate veil, to show by a preponderance of the evidence, that the financial setup of the corporation is only a sham and caused an injustice." House of Brussels Chocolates, Inc. v. Whittington, 238 P.3d 820 (Nev. 2008).

Defendant argues that Mr. Geoghegan's actions were taken in his position as the owner of Bay Management; therefore, he cannot be held individually liable unless Plaintiffs pierce the corporate veil. This is evidenced by the initial engagement letter, in which Plaintiffs retained Bay Management, not Mr. Geoghegan, to perform the consulting contract: "Bay Management Ltd. will operate as the finance department for ISEE3D Inc. and will assume responsibility for the Company's financial reporting and budgeting, the drafting and maintenance of the Company's business plans, the development of presentation materials and attendance as required at financial presentations for and on behalf of the Company." MSJ, Ex. E.

The only language in the consulting contract suggesting that Mr. Geoghegan was retained individually is in the following sentence: "Bay Management and its founder and President Mr. Mark Geoghegan (hereinafter called "The Consultant") are a financial consulting Company…" Id. However, the Court does not find that this language, identifying Mr. Geoghegan as Bay Management's owner, creates individual liability on the part of Mr. Geoghegan. Further, there is no additional document or agreement between ISEE3D and Mr. Geoghegan that would suggest that ISEE3D retained Mr. Geoghegan individually, rather than through his company Bay Management.

This interpretation is supported by the Mutual Release Agreement (MSJ, Ex. F), which indicates that the agreement was made between AGS, ISEE3D, and Bay Management—not Mr. Geoghegan. The Release Agreement expressly covers "any Claim arising in relation to the consulting contract between *Bay Management, AGS and ISEE3D Inc.* dated August 11, 2008." Id. (emphasis added).

Plaintiffs ask the Court to find that Mr. Geoghegan is individually liable for Bay Management's actions, despite having contracted with Bay Management to perform the contract in question, merely because Mr. Geoghegan was referenced in a consulting agreement as the owner and president of the company. The Court declines to extend such individual liability in instances of sole proprietorships.

Thus, Plaintiffs have failed to meet their burden to persuade this Court to pierce the corporate veil and find Mr. Geoghegan is the alter ego of or is unified with Bay Management.

Therefore, the Court finds that Plaintiffs have failed to allege a cause of action against Mr. Geoghegan individually, which disposes of the breach of implied covenant of good faith and fair dealings claim.

### 2. Lack of evidence to establish fraud or misrepresentation claims, and therefore the remaining claims of civil conspiracy and RICO claims

Although Mr. Geoghegan cannot be held individually liable for conduct as a consultant for Bay Management, and his employment under the Bay Management contract, Mr. Geoghegan may still be liable for fraudulent acts or misrepresentations, and therefore the remaining claims. He argues, however, that Plaintiffs have failed to prove the elements of their fraud and misrepresentation claims against him. The failure to do so in turn defeats Plaintiffs' civil conspiracy and RICO claims, which are based on mail and wire fraud. The Court agrees.

Fraud, negligent misrepresentation, and intentional misrepresentation each require that the defendant knows or believes her representations to be false. See Barmettler v. Reno Air, Inc., 956 P.2d 1382, 1386-87 (Nev. 1998) (fraud requires "defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation" and negligent misrepresentation applies where one "supplies false information for the guidance of others in their business transactions"); Foster v. Dingwall, 227 P.3d 1042, 1052 (Nev. 2010) (intentional misrepresentation requires "a false representation that is made with either knowledge or belief that it is false").

However, the Court finds no evidence that Defendant Geoghegan knew, had reason to know, or believed that his statements regarding Plaintiff Smith's alleged behavior, to be false. While Plaintiffs argue that Defendant *Romanica* was provided with information from ISEE3D employees that might have given him reason to believe Mr. Geoghegan's accusations were false, Defendant Geoghegan himself was not included in any of these communications. To the extent that Plaintiffs allege the falsity of these statements was revealed or suggested at the Board Meeting that Plaintiffs maintain Defendant Geoghegan attended, no evidence supports this. For example, there are no minutes of this Board Meeting. Therefore, the Court does not find that Plaintiffs have satisfied their burden as to their fraud, intentional misrepresentation, or negligent

misrepresentation claims. Because Plaintiffs' RICO charges are predicated on mail and wire fraud, which requires the specific intent to defraud, these claims also fail. See <u>Eclectic Properties E., LLC v. Marcus & Millichap Co.</u>, 751 F.3d 990, 997 (9th Cir. 2014). Similarly, Plaintiff's civil conspiracy claim fails, where no unlawful objective has been established by the evidence. See <u>Guilfoyle v. Olde Monmouth Stock Transfer Co.</u>, 335 P.3d 190, 198-99 (Nev. 2014) (internal quotations omitted).

The Court therefore GRANTS Defendant's Motion for Summary Judgment (ECF No. 111).

## VI. CONCLUSION

For the reasons stated above and at the hearing in this case, IT IS ORDERED that Defendant's Motion for Summary Judgment, ECF No. 111, is GRANTED. The Clerk of Court is instructed to close this case.

**DATED** <u>April 26, 2016</u>.

RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE